IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REYES R. RIOS,

    Petitioner,                      No. CIV S-06-1047 MCE GGH P

    vs.

K. MENDOZA-POWERS, Warden, et al.,    <u>ORDER AND</u>

    Respondents.             <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Petitioner is a former state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1988 petitioner was convicted of second degree murder and sentenced to 16 years to life. Petition, p. 1. Petitioner, along with others, participated in a beating with a baseball bat upon an individual for no apparent, significant reason. It did not appear from the facts that petitioner himself swung the bat. Petitioner challenges the 2005 decision by the California Board of Prison Hearings (BPH) finding him unsuitable for parole on grounds that the decision was not supported by sufficient evidence.

        On May 7, 2007, petitioner filed a notice of change of address indicating that he has been released on parole. On May 18, 2007, the court ordered petitioner to show cause why

1

this action should not be dismissed as moot. On June 7, 2007, petitioner filed a response to the show cause order.

For the following reasons, the court finds that this action is not moot and orders the show cause order discharged. After carefully reviewing the record, the court recommends that the petition be denied on the merits.

II. Mootness

In In re Smith, 58 Cal. Rptr. 3d 656 (2007), an unpublished case, the Sixth District of the California Court of Appeal[1] held that a parolee was entitled to have 12.75 years served in excess of his base term applied against his five year parole term. In support of this finding, the state appellate court cited Cal. Penal Code § 1170(a)(3) which provides that in the case of a prisoner serving a determinate term, "[t]he court shall advise the defendant that he or she shall serve a period of parole and order the defendant to report to the parole office closest to the defendant's last legal residence, *unless the in-custody credits equal the total sentence, including both confinement time and the period of parole.*" (Italics added.) The state appellate court also cited Cal. Code Regs. tit. 15, § 2345, which provides that when prisoners have served time beyond their sentences, the excess is to be applied against their parole periods if any.

Cal. Code Regs. tit. 15, § 2120, also cited by the California Court of Appeal in support of its conclusion, provides that "DSL [Uniform Determinate Sentence Act of 1976] prisoners and ISL [Indeterminate Sentence Law] prisoners who have DSL dates retroactively calculated are entitled to credit for good behavior and participation, and may earn work time credit. Good time and work time credit shall be deducted from the DSL release date."

The California Court of Appeal also cited In re Ballard, 115 Cal. App. 3d 647, 171 Cal. Rptr. 3d 459 (1981), where the parole board suggested that the amount of time the petitioner spent incarcerated, in excess of the period he would have spent had all custody and

---

[1] The case is not cited for precedential purposes as it is unpublished. However, because the undersigned agrees with its analysis, it is repeated here.

2

conduct credits to which he was entitled, should be deducted from his parole term.

Were this court to find that petitioner should have been found suitable by the BPH in 2005, the time he spent incarcerated until he was released on parole would be applied to his parole term pursuant to the reasoning of the state appellate court in In re Smith. For this reason, the court finds that this action is not moot.

III.   Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the

deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner filed a habeas corpus petition in the Sacramento County Superior Court raising the claims raised in this action. The Superior Court issued a reasoned decision denying this petition. Answer, Exhibit 4. The California Court of Appeal and California Supreme Court

issued opinions summarily denying petitioner's habeas corpus petitions. Answer, Exhibits 5, 6. When reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000). Accordingly, the court considers whether the denial of petitioner's petition by the Superior Court was an unreasonable application of the due process law regarding parole suitability.

III. Discussion

Respondent first argues that the court lacks subject matter jurisdiction to consider the petition because petitioner has no liberty interest in being released on parole. Respondent confuses the subject matter jurisdiction of the court with failure to state a cognizable claim. Clearly, the court has subject matter jurisdiction over petitioner's habeas corpus claim pursuant to 28 U.S.C. § 2254. Federal question jurisdiction exists if the complaint (or petition) purports to state a claim under federal law regardless of the validity of the claim. Wheeldin v. Wheeler, 373 U.S. 647, 83 S. Ct. 1441, 1444 (1963). Only if the stated federal claim is so wholly insubstantial that even a preliminary review of the merits is not required does the federal court not have jurisdiction. Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773 (1946). It is not every arguably failed claim that deprives the district court of jurisdiction. Here, petitioner properly invoked § 2254 for the basis of his habeas claim. His contentions that he was denied due process in the parole setting process are not so insubstantial so as to deprive the court of jurisdiction.

The BPH relied on the following unchanging factors to find petitioner unsuitable for parole: the offense was carried out in a manner demonstrating a callous disregard for human suffering and the motive for the crime was inexplicable or trivial. Answer, Exhibit B, pp. 63-65. Petitioner argues that the BPH's reliance on these unchanging factors to find him unsuitable violated his right to due process.

Due process requires that the BPH's decision finding a prisoner unsuitable for parole must be supported by "some evidence." Sass v. California Bd. of Prison Terms, 461 F.3d

1123, 1128 (2006).  In an order filed June 1, 2007, in Bulpitt v. Mendoza-Powers, et al., CIV S-06-0566 MCE GGH P, Judge England considered the BPH's reliance on unchanging factors, as in the instant case, to find a prisoner unsuitable for parole.  Judge England found that a state court decision upholding the BPH's use of immutable evidence, such as the circumstances of the offense, to support a denial of parole is not an unreasonable application of the "some evidence" standard.  CIV S-06-0566 MCE GGH P, June 1, 2007, order, p. 4: 16-18.  Judge England found that as the Ninth Circuit Court of Appeals stated in Sass, supra, and recently reiterated in Irons v. Carey, 479 F.3d 658 (9th Cir. 2007), a finding of unsuitability based on immutable factors that occurred decades ago when all other factors point to suitability is sufficient to constitute "some evidence" on which the petitioner can be found unsuitable for parole.[2]  Id.

Pursuant to Judge England's order in Bulpitt, supra, the court finds that the Superior Court's decision that sufficient evidence supported the BPH's 2005 decision finding petitioner unsuitable for parole was not an unreasonable application of clearly established Supreme Court authority.

\\\\\

---

[2] Of course, the conclusion regarding the unchangeable factors, here that the murder was cruel and callous and that the motive was trivial or inexplicable, as found by the BPH, and later explicitly or implicitly by the state courts in the exhaustion process, itself must be reasonable. However, unless the conclusion is based on fabricated facts, or is otherwise irrational under the accepted facts, the conclusion will be "reasonable."  Here, there is not any doubt from the facts, Exhibit 2 at 7-12 (beating death of victim by petitioner's friend after victim seen talking to two women; petitioner chased victim and stood by while beating occurred ) that the murder was cruel and callous and the motive trivial or inexplicable.
    That is the systemic problem as some would see it.  The nature of the murder cannot change; the only thing that could change is that a later panel irrationally might conclude that the murder was not calculated, or otherwise arbitrarily might decide not to take such factors into account.  Evidently, such occurred in this case as a later panel chose not to rely on the circumstances of the crime for whatever reason.  At present, there appears to be no way to rationally distinguish a grant from a denial in the BPH parole process, when otherwise similarly situated and well behaved prisoners have the unchangeable crime factors assessed, i.e., almost every murder without exception will involve some factor beyond that "minimally necessary to convict" which could be reasonably characterized as calculated, or callous, or trivial with respect to motive, etc.  Quaere whether it makes more sense not to have a parole eligibility process than to have one that is indecipherable.

Accordingly, IT IS HEREBY ORDERED that the May 18, 2007, order to show cause is discharged;

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 7/25/07

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

rios1047.157